UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUL - 9 2007



CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| YANKTON SIOUX TRIBE, a federally-recognized tribe of Indians, and its individual members; and GLENN DRAPEAU, an individual member of the Yankton Sioux Tribe, | * * * * * * | CIV 06-4180 |
| Plaintiffs, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER |
| THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; THE UNITED STATES INDIAN HEALTH SERVICE; MICHAEL LEAVITT, in his capacity as the United States Secretary of Health and Human Services or his successor in office; CHARLES GRIM, in his capacity as the Director of the United States Indian Health Service, or his successor in office; DONALD LEE, in his capacity as the Aberdeen Area Director of the United States Indian Health Service, or his successor predecessor in office; EARL COURNOYER, in his capacity as the Wagner Service Unit Director of the United States Indian Health Service, or his successor in office; JOHN DOE, whose true name is unknown, in his or her official capacity, or his successor in office; JANE ROE, whose true name is unknown, in his or her official capacity, or her successor in office; | * * * * * * * * * * * * * * * * * * * * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendants' Motion to Dissolve Temporary Restraining Order and Dismiss Case with Prejudice, Doc. 13. This motion has been fully briefed by the parties and the Court heard oral argument on the motion on June 29, 2007. The Court announced at the conclusion of the hearing that Defendant's motion was granted. The reasons for the dissolution of the temporary restraining order and the dismissal of the case are set forth below.

### BACKGROUND

Plaintiffs filed this action to challenge the decision of the United States Indian Health Service ("IHS") to close the emergency room at the Wagner IHS Health Care Facility ("Wagner IHS Facility") and convert it to an urgent care facility. The Plaintiffs in this action are the Yankton Sioux Tribe ("the Tribe), representing all of its individual members, and Glenn Drapeau, an individual member of the Tribe. Plaintiffs filed a Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction and a Petition for Writ of Mandamus to prevent the closing of the emergency room, which Plaintiffs had been notified would occur on Saturday, September 30, 2006. After a hearing on the motion with all parties represented by counsel, the Court granted a Temporary Restraining Order ("TRO") on September 29, 2006, to preserve the status quo in requiring that the Wagner IHS Facility remain open and that it serve its normal clientele. (Order, Doc. 11.) Defendants request that the TRO be dissolved and this case be dismissed with prejudice.

### A.    Previous litigation

The Tribe and an individual member of the Tribe, Joyce Golus, brought an action in 1994 to challenge decisions of the IHS to discontinue inpatient and emergency medical services for members of the Tribe at the Wagner IHS Facility. *See Yankton Sioux Tribe v. United States Dep't of Health & Human Serv.*, CIV 94-4073 (D.S.D.) (referred to herein as "*Yankton I*"). Judicial review of the challenged agency actions was sought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. In addition, the Tribe and Golus asserted Fifth Amendment due process and equal protection claims.

2

After a hearing on the request for a temporary restraining order in *Yankton I*, the Court temporarily enjoined Defendants from reducing 24-hour emergency room service and terminating employees. Following a court trial in *Yankton I*, the Court granted declaratory relief, a writ of mandamus and a permanent injunction, providing that: (1) plaintiffs were granted a declaratory judgment that the Defendants did not satisfy the requirements of 25 U.S.C. § 1631(b)(1) before closing inpatient services at the Wagner IHS Facility; (2) a writ of mandamus was issued directing that the Defendants comply with the provisions of 25 U.S.C. § 1631(b)(1) by submitting a written report to Congress regarding the discontinuation of inpatient services and the proposed termination of 24-hour emergency room services at the Wagner IHS Facility; and (3) a permanent injunction was issued enjoining the Defendants from terminating 24-hour emergency room services then available at the Wagner IHS Facility until the written report required by 25 U.S.C. § 1631(b)(1) was submitted to Congress and Congress either took final action upon such report or one year elapsed from the date the report was submitted to Congress, whichever first occurred. *See Yankton Sioux Tribe v. United States Dep't of Health and Human Serv.*, 869 F.Supp. 760, 767 (D.S.D. 1994); *Yankton I*, CIV 94-4073 (Memorandum Opinion and Order, Doc. 43, May 4, 1994.) The Tribe and Golus agreed the Court need not rule on the constitutional issues at the time the permanent injunction and final judgment were issued in 1994. An appeal of this decision was filed, but it was dismissed based upon the parties' stipulation before a decision was issued by the Eighth Circuit.

In August 2003, the Defendants in *Yankton I* moved to dissolve the permanent injunction explaining that on September 9, 1997, the written report the Court ordered to be submitted to Congress in compliance with 25 U.S.C. § 1631(b)(1), was submitted by the Secretary of Health and Human Services ("the Secretary") to the United States House of Representatives, the United States Senate and the President of the United States. The report is entitled "Report to Congress on the Impact of Closure of the Emergency Room at the Wagner Indian Health Service Hospital," ("the Impact Report"). Defendants argued in *Yankton I* that the permanent injunction should be dissolved because the Impact Report was submitted in accordance with the Court's Order and one year had elapsed from that date without action by Congress.

3

In resisting the Defendants' motion to dissolve the permanent injunction in *Yankton I*, the Tribe and Golus argued that the Defendants failed to investigate the views of the Tribe and consult with the Tribe regarding the closure of the emergency room at the Wagner IHS Facility. The Tribe and Golus maintained that the purported views of the Tribe included in the Impact Report were submitted by an attorney, James Abourezk, who was not authorized by the tribal constitution to represent the Tribe.

The Court rejected the argument in *Yankton I* that Mr. James Abourezk was not authorized to present the Tribe's views regarding the closure of the emergency room at the Wagner IHS Facility. Moreover, the Court found that 25 U.S.C. § 1631(b)(1)(E) did not require the Defendants to engage in any specific type of "consultation" as suggested by the Tribe. Rather, section 1631(b)(1)(E) states the required report must include the "views of the Indian tribes served by such hospital or facility ...." Defendants' attorney submitted a declaration in *Yankton I*, attaching minutes from two meetings held at the Fort Randall Casino to solicit the Tribe's views and discuss the closure of the emergency room at the Wagner IHS Facility. Several tribal officials and representatives of South Dakota's United States Senators were present at the meetings. It was clear from the minutes of the meetings that the individuals representing the Tribe were critical of the closing of the emergency room at the Wagner IHS Facility and were concerned about discrimination against Indians at the Wagner Community Hospital, the nearest alternative emergency room.

Based upon the written record in *Yankton I*, the Court held the Impact Report included the views of the Tribe, as required by 25 U.S.C. § 1631(b)(1)(E). The Court found the Defendants complied with the injunction enjoining the closure of the emergency room at the Wagner IHS Facility until the written report required by 25 U.S.C. § 1631(b)(1) was submitted to Congress and Congress took no action on the report within one year of its submission. Thus, the injunction in *Yankton I* was dissolved on March 23, 2004. *See Yankton I*, CIV 94-4073 (Memorandum Opinion and Order, Doc. 92, March 23, 2004). Neither the Tribe nor Golus appealed the Court's Order dissolving the injunction in *Yankton I*.

4

At the time the Court was considering Defendants' motion to dissolve the permanent injunction in 2004, Plaintiffs asked that the Court rule on the constitutional claims initially raised in *Yankton I*, because those claims had not been resolved before the issuance of the permanent injunction in 1994. The Court refused the plaintiffs' request because it held it did not have authority to reopen the litigation to decide the constitutional issues previously raised by the Tribe and Golus in 1994. *See Yankton I*, CIV 94-4073 (Memorandum Opinion and Order, Doc. 92, March 23, 2004).

**B.      Activity After Injunction Dissolved**

After the injunction was dissolved on March 23, 2004, several proposed deadlines to close the emergency room at the Wagner IHS Facility passed without the closure occurring. On January 30, 2006, the Tribe and Glenn Drapeau filed an action against Defendants seeking a temporary restraining order and injunctive relief to prevent the closing. *See Yankton Sioux Tribe v. United States Dep't of Health and Human Serv.*, CIV 06-4022 (D.S.D.). Two days later, that action was dismissed without prejudice on motion of the Plaintiffs because Robert G. McSwain, Deputy Director of the Department of Health and Human Services, informed the Tribe by letter dated January 31, 2006, that the emergency room at the Wagner IHS Facility would be kept open for the remainder of the fiscal year. Plaintiffs thereafter received formal written notice of the Defendants' plans to close the emergency room on September 30, 2006, as well as verbal notice of this decision from Earl Cournoyer, CEO of the Wagner IHS Facility.

After the Court dissolved the permanent injunction in *Yankton I*, then-Secretary of the United States Department of Health and Human Services, Tommy G. Thompson, issued a statement announcing the Department's formal Tribal Consultation Policy, which became effective on January 14, 2005. The Tribal Consultation Policy is attached as Exhibit 12b to the Complaint in the present action.

The IHS commissioned a week-long visit to the Wagner IHS Facility by the Sharpless Inc. Health Care Management Consulting Company ("Sharpless"). This visit occurred in September

2005. Sharpless issued a final report concerning its visit, which Plaintiffs assert demonstrates the Impact Report is wrong. Plaintiffs argue Defendants should be required to provide the Sharpless report to Congress before closing the emergency room.

## C.     The Present Action

The present action was filed on September 28, 2006, two days before the date the emergency room at the Wagner IHS Facility was scheduled to be closed and the facility converted to an urgent care center. The Tribe and Drapeau filed this action seeking a Writ of Mandamus under 28 U.S.C. §§ 1361 and 1362, declaratory relief under 28 U.S.C. § 2201, and injunctive relief, to enjoin Defendants from proceeding with their announced plan to close the emergency room at the Wagner IHS Facility, and convert it to an urgent care facility with reduced hours and levels of service. The hours of operation of the urgent care facility are scheduled to be limited to 7 a.m. to 11 p.m. on days other than federal holidays and Sundays, and the new urgent care facility will not accept patients brought there by ambulance. Plaintiffs alleged Defendants' intended action would cause irreparable harm to the eligible Indians and tribal members currently being served by the emergency room because it would result in the loss of lives. A telephonic hearing on the motion was held on September 29, 2006, with both sides being represented by counsel. The Court entered a TRO on September 29, 2006, to maintain the status quo. (Doc. 11.)

In this action, Plaintiffs contend Defendants: (1) failed to timely and properly notify Congress of the impact on the Plaintiffs of the proposed partial closure of the emergency room on September 30, 2006, as required by 25 U.S.C. § 1631(b), which requires the Defendants to so notify Congress in each Presidential Budget request; (2) failed to meaningfully consult with the Plaintiffs prior to the proposed closure, as required by federal statutes, regulations and the Tribal Consultation Policy; (3) failed to provide due process of law to the Plaintiffs, in violation of the Fifth Amendment to the United States Constitution, by failing to give notice and an opportunity to be heard prior to the taking of a property interest that the Plaintiffs had in continued 24-hour emergency room services at the Wagner IHS Facility; (4) improperly took funds from the budget of the Wagner Service Unit to pay for the contracting of health care services by the Santee Sioux Tribe of Nebraska, rather than from

6

the Aberdeen Area Office's budget reserves or another service unit responsible for the Santee Sioux Tribe, which caused the Wagner Service Unit to go into budgetary crisis.   This budgetary crisis in turn caused the Wagner Service Unit CEO to propose to close the 24-hour emergency room services at the Wagner IHS Facility earlier than it would have otherwise been closed because of lack of funds; and (5) violated the federal trust responsibility of the Federal government to the members of the Tribe and other eligible Indians served by the emergency room at the Wagner IHS Facility.

In addition to the above general claims, the Complaint contains more specific factual allegations.  Plaintiffs allege the Impact Report did not address the statutorily-required factors on closure of the emergency room and it was inaccurate and misleading as to the impact of closure on Plaintiffs and Native Americans who utilize the Wagner IHS Facility.  They also allege the Defendants should have submitted an updated impact report to Congress in **each** President's Budget Request after 1997 up to the most recent notification of closure of the emergency room.

The primary basis for Defendants' motion is that this action is barred by the doctrine of res judicata.  They contend Plaintiffs in this action are seeking to re-litigate the claims in *Yankton I*, but that a final judgment was entered in that action, barring this litigation.  Defendants contend all of the claims raised in the present action were raised in *Yankton I*, or could have been raised in that action. They also claim the updated Tribal Consultation Policy, effective January 14, 2005, does not create a private right of action against the agency for failure to comply with the policy.  Defendants further claim that 25 U.S.C. § 1631(a) does not require consultation before closure of facilities.  Rather, 25 U.S.C. § 1631(b) requires that the views of the affected tribe are to be included in the agency's impact report.

## DISCUSSION

In considering a motion to dismiss, the Court must assume all facts alleged in the complaint are true, *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994), and the complaint is to be viewed in the light most favorable to the non-moving party, *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). "A motion to dismiss should be granted as a practical matter ... only in the unusual case

in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* (citations and quotation marks omitted). "At the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Id.* (citation omitted).

The Supreme Court explained that, "[t]he federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). The benefits to be gained from these doctrines are that, "res judicata and collateral estoppel relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* To establish that Plaintiffs' claims in this action are barred by res judicata, Defendants must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). *Yankton I* is the lawsuit Defendants contend precludes the claims in the present action.

Plaintiffs first resist Defendants' motion because they contend there are matters in the pleadings that warrant discovery before the Court rules on the pending motion based on res judicata. The Court disagrees. "The res judicata effect of a prior judgment is a question of law." *United States ex rel. Yankton Sioux Tribe v. Gambler's Supply, Inc.*, 925 F.Supp. 658, 663 (D.S.D. 1996). The written record in this action is sufficient for the Court to decide the res judicata effect of the decisions in *Yankton I*.

Another general objection Plaintiffs raise to the Court's consideration of the Defendants' motion is that in the event the Court determines matters outside of the pleadings have been raised, Defendants' motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56. The Court does not find Defendants' motion must be treated as one for summary

8

judgment, however, because only materials attached to the pleadings or of public record will be considered in ruling on Defendants' motion pursuant to FED.R.CIV.P. 12(b)(6). *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (explaining that materials attached as exhibits to the complaint may be considered in ruling on a motion to dismiss under FED.R.CIV.P. 12(b)(6)); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (explaining that materials that are part of the public record may be considered in ruling on a motion under FED.R.CIV.P. 12(b)(6)); 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

Plaintiffs also contend the continuing claims doctrine bars application of res judicata in this case because 25 U.S.C. § 1631(b)(1), when read in light of the accompanying Senate Committee Report, creates a continuing duty to: (1) provide an impact report in each Presidential Budget Report, which occurs every two years, until the facility at issue is closed; (2) consult with the Tribe before closure of the emergency room at the Wagner IHS Facility; and (3) prevent denial of due process under the Fifth Amendment to the Indians receiving care at the emergency room of the Wagner IHS Facility. The cases cited by Plaintiffs do not support the use of the continuing claims doctrine in the present case. It appears Plaintiffs are attempting to use the continuing claims doctrine to save their claims that accrued before the injunction was dissolved in *Yankton I*. But, as further explained below, those claims are barred by res judicata and Plaintiff's attempt to use a doctrine related to statutes of limitations to save those claims is rejected. If Plaintiffs are able to show, however, that Defendants committed a new violation of law subsequent to the decision in *Yankton I* to dissolve the injunction, such a claim is not barred by res judicata to the extent it is not the same as any of the claims that were raised or could have been raised in *Yankton I*. But it is not the continuing claims doctrine that saves such a claim from dismissal. Rather, the principle that saves those claims from dismissal on preclusion grounds is that, "res judicata does not apply to claims that did not exist when the first suit was filed." *Ripplin Shoals Land Co., LLC v. United States Army Corps of Engineers*, 440 F.3d 1038, 1042-43 (8th Cir. 2006). Plaintiffs' allegations of new violations that occurred after

the injunction in *Yankton I* was dissolved will be discussed below following the discussion of the application of res judicata to claims that were raised or could have been raised in *Yankton I*.

As to the first requirement for res judicata, the decision in *Yankton I* granting a permanent injunction was final for purposes of appeal and it was rendered on the merits of the plaintiffs' claims in that action. An appeal was filed from that decision, but the parties stipulated to dismissal of the appeal. Thus, that decision became final as to all claims that were raised, or could have been raised in that action. The second decision in *Yankton I*, dissolving the injunction was also a final decision on the merits. No appeal was taken from that decision, rendering it a final judgment on the merits of the dissolution of the injunction.

In their brief opposing dismissal of this action on the basis of res judicata, the Plaintiffs argue the judgment in *Yankton I* was a final judgment on the merits of the claims in that action, but that it is not a final judgment on the merits of the facts and claims in the present action. (Doc. 23 at p. 13-14.) Plaintiffs also appear to argue, however, that there was not a final judgment on the merits of the constitutional claims in *Yankton I* because the parties agreed the Court need not rule on those claims. Thus, Plaintiffs argue res judicata cannot apply in this action because the constitutional deprivations were never actually litigated. This argument is rejected, because it is settled law that, "[f]inal judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action." *Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001). If the elements of res judicata are met, "the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Id.* (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948)). Thus, it is clear that even though the Court did not rule on the merits of the constitutional claims in *Yankton I*, the constitutional claims are barred by res judicata because they were offered to sustain the relief sought in that action. The Court concluded, and the parties agreed, it was not necessary to rule on the constitutional claims in *Yankton I*, because the plaintiffs were granted the relief they sought on their statutory claims. Although this decision was appealed, the parties stipulated to a dismissal of the appeal. If the plaintiffs in *Yankton I*

10

believed they were entitled to more relief than was granted by the Court on their statutory claims, they were required to pursue the constitutional claims at that time. Moreover, plaintiffs attempted to litigate their constitutional claims again in 2004, but the Court held it was "not authorized to reopen this litigation to provide additional relief [on the constitutional claims] as requested by Plaintiffs." *Yankton I*, Memorandum Opinion and Order, Doc. 92 at p. 6.

The plaintiffs in *Yankton I* did not appeal the Court's decision refusing to reopen the litigation to address the constitutional claims. In the Court's view, such an appeal would have been without merit. Present counsel for the Tribe suggested during argument on the pending motion that possibly a new lawsuit should have been promptly started rather than appealing. A new lawsuit would have had no better fate than the present lawsuit. The Court further observes that counsel for the Tribe faced a dilemma after injunctive relief was granted by the Court in *Yankton I* as the Tribe got all the relief it requested, but the relief was granted on grounds other than the constitutional claims. Since full relief was granted, the Tribe was not an aggrieved party and could not pursue the constitutional claims they had raised. Because of well settled doctrine, the constitutional claims were thus nonetheless dismissed and became res judicata. One result of not addressing constitutional claims if the dispute can be resolved on other bases is a lack of development of constitutional law. Another result is a result such as this one where constitutional claims that were raised but not decided on the merits are then precluded. These are some of the prices to be paid for the appropriate use of parsimony in deciding constitutional issues.

The parties agree the second requirement is met. The record establishes the injunction and dissolution of that injunction in *Yankton I* were issued by a court of competent jurisdiction.

The third requirement is that the parties involved in both suits are the same or in privity with each other. The Tribe was a party to both suits. Drapeau, an individual member of the Tribe, is the second named Plaintiff in this action while Golus was the individual member of the Tribe named as a Plaintiff in *Yankton I*. Plaintiffs contend that Drapeau and Golus were not in privity with each other.

11

In *Yankton I*, Golus was described by the plaintiffs as "an enrolled member of the Yankton Sioux Tribe. She and members of her immediate family, including her children, have been receiving all of their health care needs free of charge from the Wagner IHS Hospital and Health Care Facility, or from health care providers contracted with by the Indian Health Service for her benefit." CIV 94-4073, Complaint, Doc. 1 at ¶ V.

In this action, Plaintiff Glenn Drapeau is similarly described as "an enrolled member of the Yankton Sioux Tribe, with a spouse and children, all of whom are recipients of the health care services [described in the complaint]. Plaintiff Glenn Drapeau is dependent upon health care services, including the 24-hour emergency room services, that have been provided to him by IHS without cost by the Wagner Service Unit of the IHS, for his benefit." (Complaint, Doc. 1 at ¶ 4.)

The Eighth Circuit recognized that a nonparty whose interests were adequately represented by a party to the prior action may be found to be in privity with a party to the prior action. *See Tyus v. Schoemehl*, 93 F.3d 449, 454-55 (8th Cir. 1996). Preclusion based on adequate representation is otherwise known as "virtual representation." *See id.* "'Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.'" *Id.* at 454 (quoting *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)). The Court must examine several factors in making the fact-intensive inquiry of whether a nonparty was adequately represented such that the party to the first suit can be considered the virtual representative of the other in a subsequent suit. *See Black Clawson Co., Inc. v. Kroenert Corp.*, 245 F.3d 759, 764 (8th Cir. 2001). Those factors include:

> [I]dentity of interests between the parties, how closely they are related, whether the party to the present suit participated in or deliberately maneuvered to avoid the effects of the first action, and whether the party to the first action had incentive to protect the interests of the second party.

*Id.*; *see Tyus*, 93 F.3d at 455 (setting forth the factors to be considered in determining whether virtual representation applies in a particular case).

12

In this case, the Court finds the Tribe and Golus in *Yankton I* were the virtual representatives of Drapeau. Golus and Drapeau's interests are identical, as they are both members of the Tribe and both have an interest in keeping the emergency room open at the Wagner IHS Facility to continue receiving medical treatment at that facility. The Tribe in *Yankton I* likewise had identical interests to Drapeau in the present case. Golus and Drapeau are related in the sense that they are both members of the same Tribe. Drapeau is a member of the Tribe, which was a plaintiff in both *Yankton I* and the present action, creating a close relationship between the Tribe and Drapeau. There is no evidence that Drapeau participated in or deliberately maneuvered to avoid the effects of *Yankton I*. The Tribe and Golus had every incentive to protect the interests of Drapeau as a member of the Tribe who utilizes the services at the Wagner IHS Facility's emergency room. There is abundant evidence that the Tribe and Golus were so closely aligned with Drapeau's interests as to be his virtual representatives. Having examined all relevant factors, the Court finds the third requirement for application of res judicata, that the parties involved in both suits are the same or in privity with each other, is met in this case. The Court further notes that the Tribe is the primary plaintiff in this action and was also the primary plaintiff in *Yankton I*, with Golus and Drapeau having minor roles in the litigation.

The fourth requirement is that, "both suits are based upon the same claims or causes of action." *Costner*, 153 F.3d at 673. The Eighth Circuit adopted the Restatement (Second) of Judgments to determine whether two causes of action are the same: "[g]enerally, under this approach a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). "In the final analysis, the test would seem to be whether *the wrong for which redress is sought* is the same in both actions." *Costner*, 153 F.3d at 674 (quotation marks and citations omitted).

Plaintiffs seek to litigate several claims in this case regarding Defendants' actions in seeking to close the emergency room at the Wagner IHS Facility. Each of those claims will be examined below to determine whether they arise out of the same nucleus of operative facts as the claims in *Yankton I*.

13

The first claim that will be examined is Plaintiffs' constitutional claim mentioned above. Plaintiffs claim their right to due process of law under the Fifth Amendment to the United States Constitution has been violated because they have been denied notice and an opportunity to be heard before the taking of a property interest they have in continued 24-hour emergency room services at the Wagner IHS Facility. This Fifth Amendment claim was also raised in *Yankton I*. (*See* CIV 94-4073, Complaint, Doc. 1 at ¶ XVIII). The Fifth Amendment claim is the same cause of action in the present case as in *Yankton I*, because it arises out of the same nucleus of operative facts as the Fifth Amendment claim in *Yankton I*. The wrong for which plaintiffs in *Yankton I* sought redress is the same as the wrong Plaintiffs seek to redress in the present action. Thus, the fourth requirement for application of res judicata is satisfied as to Plaintiffs' Fifth Amendment claim.

Another allegation made by Plaintiffs is that the Impact Report did not follow the criteria set forth in 25 U.S.C. § 1631(b)(1) by discussing, factor by factor, the specific impact closure of the emergency room would have on the Plaintiffs. Whether the Impact Report met the requirements of 25 U.S.C. § 1631(b)(1) was the issue determined by the Court in considering Defendants' motion to dissolve the injunction in *Yankton I*. Although the plaintiffs in *Yankton I* did not specifically raise the claim now made, it is a claim that arose out of the same nucleus of operative facts as the claims in *Yankton I* and it is a claim that could have been raised in opposing Defendants' motion to dissolve the injunction in *Yankton I*. *See Allen*, 449 U.S. at 95 (holding that, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

Lack of consultation is another claim alleged by Plaintiffs. Failure to comply with the Tribal Consultation Policy will be discussed below because that became effective after the injunction in *Yankton I* was dissolved and would, therefore, not have arisen out of the same nucleus of operative facts as the prior claim. In *Yankton I*, the Court rejected the Tribe's argument that there had not been sufficient consultation before the decision to close the emergency room was made and the Impact Report was submitted to Congress. This argument was rejected in *Yankton I* in light of the evidence presented by the Defendants regarding the meetings held between the Defendants and the

14

Tribe. Moreover, the Court held that 25 U.S.C. § 1631(b)(1)(E) did not require the Defendants to engage in any specific type of consultation as suggested by the Tribe. Rather, this statute required the report to include the "views of the Indian tribes served by" a facility or hospital the Defendants sought to close. *Id.* Accordingly, Plaintiffs' lack of consultation claim clearly arises out of the same nucleus of operative facts as the lack of consultation claim in *Yankton I*, and, thus, is barred by res judicata. *See Allen*, 449 U.S. at 95 (holding that, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

A claim raised in this action that was not raised in *Yankton I*, is that Defendants are required to submit a new Impact Report with every Presidential Budget request until the emergency room at the Wagner IHS Facility is closed. Defendants submitted the required Impact Report to Congress in 1997. They were required to wait at least one year after its submission before closing the emergency room. Defendants did not seek to have the injunction dissolved until 2004. According to Plaintiffs' argument, Defendants should have submitted additional reports to Congress in each Presidential Budget request from 1998 forward until the emergency room is closed. Plaintiffs in *Yankton I*, however, did not raise this issue when opposing Defendants' motion to dissolve the injunction in 2004, by which time Defendants should have submitted several reports according to Plaintiffs' argument. This claim clearly arose out of the same nucleus of operative facts as those in *Yankton I* and could have been raised as a basis to not dissolve the injunction in 2004. Accordingly, this claim is barred by res judicata. *See id.*

Even if Plaintiffs' claim that Defendants are required to submit an updated Impact Report with every Presidential Budget request was not barred by res judicata, Plaintiffs would not be entitled to relief on this claim. Although the Court finds it would be reasonable for Defendants to update the Impact Report, Plaintiffs cannot state a claim upon which relief may be granted for Defendants' failure to update the Impact Report. The only statutory requirement is that an impact report be submitted one year *before* an IHS Facility is closed, which the Court ruled in *Yankton I* has been satisfied. *See* 25 U.S.C. § 1631(b)(1) (requiring a closure impact report to be "submitted to the

Congress at least 1 year prior to the date such hospital or facility (or portion thereof) is proposed to be closed ...."). Nothing in the 1992 amendments changed Section 1631(b)(1) to explicitly require the IHS to update impact reports in each President's Budget Request. *See id.* Plaintiffs' argument that one reference to *"each* President's Budget Request" in the Senate Committee Report to the 1992 amendments changed the explicit requirement in the statute of one year's advance notice of closure to one year's advance notice *to be updated until closure* is unpersuasive. S. Rep. 102-392, 1992 U.S.C.C.A.N. 3943, 3967 (Aug. 27, 1992) (emphasis added). The quoted reference is contained in the summary of the 1992 amendments. *Id.* There is no reference in the Senate Committee Report to *each* President's Budget Request in the later, more detailed description of the 1992 amendment to 25 U.S.C. § 1631(b). *See* S.Rep. 102-392, 1992 U.S.C.C.A.N. 4005. Based upon the above discussion, Plaintiffs would not be entitled to relief on this claim.

The above discussion demonstrates the elements of res judicata are met in this case as to the claims that were or could have been raised in *Yankton I* before the injunction was dissolved. Thus, the claims discussed above, are barred by the doctrine of res judicata. Below, the Court will discuss the new claims raised in this action that could not have been raised in *Yankton I.*

One claim Plaintiffs assert as a new claim that could not have been raised in *Yankton I* is a failure to consult with the Tribe under the Defendants' Tribal Consultation Policy, which became effective January 14, 2005. Plaintiffs claim the Policy created a "justified expectation that they would receive a meaningful opportunity to provided [sic] their views before the decision to close the emergency room was made." (Complaint, Doc. 1 at ¶ 19.) The Policy, however, specifically provides that, "Nothing in the Policy creates a right of action against the Department for failure to comply with this Policy." (Complaint, Doc. 1, Ex. 12b at ¶ 14.) Even if Plaintiffs had an enforceable right to notice and an opportunity to be heard pursuant to the Tribal Consultation Policy, the Court finds there was no new or additional duty to consult with the Tribe in this case because closure of the emergency room on September 30, 2006 was not a new decision. Rather, the record in *Yankton I* and the exhibits attached to the Complaint in this action demonstrate that the decision to close the emergency room was made before the *Yankton I* lawsuit was filed. The actual closure

16

of the emergency room was held in abeyance while the injunction was in place requiring Defendants to prepare the Impact Report and submit it to Congress. Thus, the closure in September 2006 was not a new decision, but rather it was the execution of a decision made well before the Tribal Consultation Policy became effective. The IHS granted several extensions of the closure date based upon requests of the Tribe. But there has never been a change from the original decision that the emergency room would be closed. Moreover, the Court found in *Yankton I* that even if there was a duty to consult, Defendants satisfied that duty by holding meetings with the Tribe to discuss the possible closure of the emergency room. The Tribe's views objecting to the closure were communicated to Congress as required by 25 U.S.C. § 1631(b)(1)(E). Based upon the above discussion, the Court finds Plaintiffs have failed to state a cause of action for failure to comply with the Tribal Consultation Policy upon which relief may be granted and this claim will be dismissed pursuant to FED.R.CIV.P. 12(b)(6).

Related to the argument of updating impact reports addressed above, Plaintiffs argue Defendants are violating their constitutional rights by refusing to provide the Sharpless Report to Congress. The Sharpless Report is claimed by Plaintiffs to be evidence that closure of the emergency room threatens imminent loss of life without due process as required by the Fifth Amendment to the United States Constitution. Plaintiffs have not, however, pointed to any requirement that Defendants have failed to follow, which could be construed as violating their due process rights. Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted as to the Sharpless Report. Although Defendants are not required by 25 U.S.C. § 1631(b) to submit the Sharpless Report to Congress, the Court is not aware of any law that would prohibit Defendants from submitting this report to Congress, in addition to any new information Defendants have acquired regarding the closure of the Wagner IHS Facility.

Another claim that is not barred by res judicata is Plaintiffs' claim that in 2005 Defendants made the decision to and did unlawfully take funds for the Santee Sioux Tribe's contracting of health services from the Wagner Service Unit, rather than the Winnebago Service Unit, thereby causing a budgetary crisis in the Wagner Service Unit and leading to the impending closure of the emergency

room at the Wagner IHS Facility. As discussed above, Defendants' decision to close the emergency room at the Wagner IHS Facility was made before *Yankton I* was filed, which was more than ten years before any funds were allegedly unlawfully taken from the Wagner Service Unit. Although closure has been delayed several times due to litigation and requests by the Tribe, the IHS has not changed its decision to close the emergency room at the Wagner IHS Facility since that decision was originally made. Thus, the decision to close the emergency room at the Wagner IHS Facility could not have been caused by a budgetary crisis relating to the Defendants' 2005 decision regarding allocation of agency funds.

The final claim not barred by res judicata is Plaintiffs' claim that Defendants have violated a federal trust responsibility based upon their conduct following the dissolution of the injunction in *Yankton I*. No specific conduct in addition to the Defendants' actions discussed above is alleged to violate the Defendants' trust responsibilities. Rather, Plaintiffs make a general allegation that the Defendants' conduct in seeking to close the emergency room violates the "special trust relationship between the Federal government and the Indians." (Complaint, Doc. 1, ¶ 16.) There is a special trust relationship between the Federal government and Indian people. The only specific factual bases alleged have been dismissed and no other specific factual basis is alleged to support a breach of Defendants' federal trust responsibility. A general allegation that closing the emergency room violates that trust relationship does not in and of itself state a separate cause of action.

## CONCLUSION

All claims that were or could have been raised in *Yankton I* relating to the closure of the Wagner IHS Facility are barred by res judicata and will be dismissed with prejudice. The new claims raised by Plaintiffs in this action that arose after the injunction in *Yankton I* was dissolved are discussed above and the Court concluded that none of those claims state a cause of action upon which relief may be granted and they will be dismissed with prejudice. Accordingly,

18

IT IS ORDERED:

1.    That Defendants' Motion to Dissolve Temporary Restraining Order and
      Dismiss Case with Prejudice, Doc. 13, is granted and all of the Plaintiffs'
      claims in this action are dismissed with prejudice.

2.    That the Court's Order, Doc. 11, imposing a Temporary Restraining Order
      on September 29, 2006, requiring that Indian Health Services Medical
      Facility in Charles Mix County, South Dakota, to remain open, is vacated.

Dated this 9th day of July, 2007.

                                    BY THE COURT:

                                    Lawrence L. Piersol
                                    United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:
                    DEPUTY

19